IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRADELY COTTRELL,
on behalf of the Estate of
BERNARD DALE COTTRELL,

               Plaintiff,

v.                                               CIVIL ACTION NO. 2:18-cv-01281

NATHAN SCOTT STEPP,
Individually as a member of the
West Virginia State Police, et al.,

               Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Bradely Cottrell ("Plaintiff") brings this action on behalf of the estate of his deceased father, Bernard Dale Cottrell ("Mr. Cottrell"), pursuant to 42 U.S.C. § 1983 and West Virginia state law against Defendants Nathan Scott Stepp ("Stepp"), Zach W. Hartley ("Hartley"), Okey S. Starsick ("Starsick"), the West Virginia State Police ("WVSP") (collectively, "State Police Defendants"), Robert B. Hickman ("Hickman") and the Roane County Sheriff's Department ("RCSD") (collectively, "Roane County Sheriff Defendants"). (ECF No. 1.) Before this Court are motions to dismiss filed by State Police Defendants, (ECF No. 10), and by RCSD, (ECF No. 13). For the reasons explained more fully herein, State Police Defendants' motion, (ECF No. 10), is **GRANTED IN PART** and **DENIED IN PART**. RCSD's motion, (ECF No. 13), is **GRANTED**.

1

## I. BACKGROUND

This case arises out of the September 6, 2016 death of Mr. Cottrell at the hands of WVSP and RCSD officers during a high-speed pursuit. (ECF No. 1 at 5–8.) The complaint alleges that Mr. Cottrell's family contacted law enforcement to report that Mr. Cottrell had brandished a shotgun and was mentally ill. (*Id.* at 5.) That afternoon, the officers "pursued Mr. Cottrell []at a high rate of speed" and were able to disable his vehicle by "block[ing] him in" when he attempted to "evade pursuit" by making "a three-point turn to change direction." (*Id.*) Immediately afterward, Stepp, Hartley, and Hickman exited their cruisers and began firing their weapons at Mr. Cottrell, whom they claim was armed. (*Id.* at 5–6.) The officers fired a total of 29 shots, 8 of which hit Mr. Cottrell, killing him. (*Id.* at 6.)

State Police Defendants filed a motion to dismiss several of Plaintiff's claims on October 2, 2018. (ECF No. 10.) Plaintiff filed a timely response, (ECF No. 18), and State Police Defendants filed a timely reply, (ECF No. 20). RCSD filed a motion to dismiss all of Plaintiff's claims against it on October 3, 2018. (ECF No. 13.) Plaintiff filed a timely response, (ECF No. 19), and RCSD filed a timely reply, (ECF No. 21). As such, the motions to dismiss are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must

2

plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III. ANALYSIS

A. *State Police Defendants' Motion to Dismiss*

1. Sovereign Immunity

WVSP contends that Plaintiff's 42 U.S.C. § 1983 claim against it should be dismissed because the Eleventh Amendment to the United States Constitution bars such claims against states and their agencies. (*See* ECF No. 11 at 5–7.) Indeed, the Eleventh Amendment prohibits actions for money damages against states, their instrumentalities, and their agents in most circumstances. *See Lee-Thomas v. Prince George's Cty. Pub. Schs.*, 666 F.3d 244, 248–49 (4th Cir. 2012). This sovereign immunity applies to § 1983 claims; thus, a state and its instrumentalities are not considered "persons" that may be sued under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989). Plaintiff concedes that Count III, his § 1983 claim against WVSP, should be dismissed "on sovereign immunity grounds." (ECF No. 18 at 2 n.1.) Accordingly, Count III is **DISMISSED WITH PREJUDICE**.

2. Official Immunity

Stepp and Hartley argue that they are entitled to immunity from suit with respect to Plaintiff's negligence claims against them. (ECF No. 11 at 8–10.) "Under the doctrine of qualified immunity, the discretionary actions of government agencies, officials and employees performed in an official capacity are shielded from civil liability so long as the actions do not violate a clearly established law or constitutional duty." *W. Va. State Police v. Hughes*, 796 S.E.2d 193, 198 (W. Va. 2017).[1] This rule operates even when the "discretionary acts" that are the subject of the complaint were "committed negligently." *Maston v. Wagner*, 781 S.E.2d 936,

---

[1] The parties agree that Stepp and Hartley were engaged in a discretionary function at the time of the incident described in Plaintiff's complaint. (ECF No. 18 at 7; *see* ECF No. 11 at 8; ECF No. 20 at 4.)

4

948 (W. Va. 2015). Therefore, in determining whether qualified immunity applies, the principal inquiry is whether a public official's conduct "violate[s] clearly established laws of which a reasonable official would have known" or is "fraudulent, malicious, or otherwise oppressive." *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 762 (W. Va. 2014) (quoting Syllabus, *State v. Chase Sec., Inc.*, 424 S.E.2d 591 (W. Va. 1992)). If so, then the official is not entitled to qualified immunity. *See* Syl. Pt. 5, *Maston*, 781 S.E.2d 936.

On the other hand, if the public official's alleged conduct does not "violate a clearly established statutory law or constitutional right" and is not "fraudulent, malicious, or otherwise oppressive"—*i.e.*, the claim is one of "mere negligence"—then the public official is entitled to qualified immunity "[i]n the absence of an insurance contract waiving the defense." *A.B.*, 766 S.E.2d 751 at 762–64 (alterations and internal quotation marks omitted); *see Clark v. Dunn*, 465 S.E.2d 374, 380–81 (W. Va. 1995). Stepp and Hartley argue that Plaintiff's claims fall within the "mere negligence" category and should thus be dismissed. (*See* ECF No. 11 at 8; ECF No. 20 at 4.) However, despite the "negligence" label the complaint gives to those claims, Plaintiff alleges that Stepp's and Hartley's actions were "reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Mr. Cottrell." (ECF No. 1 at 14.) Plaintiff further "incorporates by reference the allegations made in" his previously alleged claims, including those for excessive force and battery. (*Id.*) In other words, Plaintiff alleges that Stepp and Hartley engaged in "malicious" conduct that may constitute a violation of Mr. Cottrell's constitutional rights. (*See id.*) Accordingly, this Court finds it inappropriate to dismiss the "negligence" claims as barred by qualified immunity at this time. State Police Defendants' motion to dismiss Count VI of Plaintiff's complaint is **DENIED**.

3. State Constitutional Claims

Stepp and Hartley also assert that Plaintiff's claim made pursuant to Article III, Section 10 of the West Virginia Constitution must be dismissed because he makes a claim under Article III, Section 6 of the West Virginia Constitution. (ECF No. 11 at 10–11.) Stepp and Hartley argue that Plaintiff cannot bring a substantive due process claim when another, more specific constitutional provision covers the allegedly violated right. Count IV of Plaintiff's complaint is based on Stepp's and Hartley's use of "excessive and deadly force . . . during the shooting of Mr. Cottrell on September 6, 2016, resulting in his death." (ECF No. 1 at 12.) It alleges claims based on Article III, Section 10 of the West Virginia Constitution, which corresponds with the federal Constitution's due process clause, and Article III, Section 6 of the West Virginia Constitution, which corresponds with the federal Constitution's Fourth Amendment protections against unreasonable searches and seizures. (*See id.*)

Plaintiff contends that West Virginia law recognizes a private right of action for state constitutional violations, including claims brought pursuant to Article III, Section 10. (ECF No. 18 at 4.) However, Plaintiff's response fails to address the Supreme Court's instruction that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original); *see United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (*Graham* . . . requires that if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

Although the West Virginia Constitution may in some circumstances provide additional protections beyond those provided by the United States Constitution, *State v. Osakalumi*, 461 S.E.2d 504, 512 (W. Va. 1995), "the protections afforded West Virginia citizens under [Article III, Section 6 of the state constitution] are co-extensive with those provided in the Fourth and Fourteenth Amendments to the United States Constitution," *State v. Clark*, 752 S.E.2d 907, 920–21 (W. Va. 2013). Therefore, this Court concludes that the rule stated in *Graham* and reinforced in *Lanier* applies to state constitutional claims as well; that is, the protections afforded by substantive due process are "at best redundant" of those afforded by the more specific provisions of Article III, Section 6. *Graham*, 490 U.S. at 395 n.10. This Court has no reason to believe that the West Virginia Supreme Court of Appeals would apply a different rule in its construction of Article III, Section 10. As such, insofar as Count IV relies on Article III, Section 10 of the West Virginia Constitution, it is **DISMISSED WITH PREJUDICE**.

4. Supervisory Liability

Finally, Starsick argues that Plaintiff's complaint fails to allege facts sufficient to establish a 42 U.S.C. § 1983 failure to supervise claim against him. (ECF No. 11 at 12–14.) Specifically, Plaintiff must plead facts to suggest that Starsick "had actual or constructive knowledge that [Stepp and Hartley] w[ere] engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like [Mr. Cottrell]"; that Starsick's "response to that knowledge was so inadequate as to show 'deliberate indifference or tacit authorization of the alleged offensive practices'"; and "that there was an 'affirmative causal link' between [Starsick's] inaction and the particular constitutional injury suffered." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

7

With respect to the first element, the complaint must allege facts to suggest "that the conduct is widespread, or at least has been used on several different occasions." *Id.* (quoting *Shaw*, 13 F.3d at 799). "As to the second element, [Plaintiff] 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses.'" *Id.* (quoting *Shaw*, 13 F.3d at 799). Plaintiff avers that Stepp and Hartley "have been involved in numerous other incidents of excessive force, assault, physical violence, and other unlawful acts and abusive practices" as employees of WVSP. (ECF No. 1 at 3.) He further alleges that Starsick, their supervisor, "knew or should have known about these numerous other incidents of excessive force and violence" but "turned a blind eye to [the officers'] unlawful conduct." (*Id.*) Plaintiff also asserts that WVSP places employees "who are being investigated, sued, and/or prosecuted for committing unlawful acts" on "military leave" in order "to shield and/or hide" them. (*Id.*) Taken together, these facts are sufficient to allege a § 1983 supervisory liability claim against Starsick. Thus, State Police Defendants' motion to dismiss that claim is **DENIED**.

   B. *RCSD's Motion to Dismiss*

RCSD argues that Plaintiff's complaint includes only "threadbare" allegations to support Plaintiff's § 1983 claim against it. (ECF No. 14 at 4.) RCSD further contends that it is not a suable entity. (ECF No. 21 at 2–3.)[2] With respect to the latter proposition, RCSD points this Court to several federal district court decisions holding that West Virginia law does not authorize suits against a county sheriff's office. (*See id.*) That line of cases explains that the proper

---

[2] RCSD raises this argument for the first time in its reply brief. (*Compare* ECF No. 14, *with* ECF No. 21.) Ordinarily, this Court would not consider an argument raised in reply in the first instance. *See Moseley v. Branker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008) ("As a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived."); *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 745 n.4 (S.D.W. Va. 2014) ("[A]n argument raised for the first time in a reply brief or memorandum will not be considered."). However, because RCSD's argument goes to its capacity to be sued, this Court will address it in this instance.

defendant in a suit against the sheriff's office is either the sheriff himself, in his official capacity, *see Terlosky v. Matthews*, No. 5:11-cv-00026, 2011 WL 1302238, at *2 (N.D.W. Va. Mar. 31, 2011); or the county commission, as the county's governing body, *see Zsigray v. Cty. Comm'n*, No. 2:16-cv-00064, 2017 WL 462011, at *2 (N.D.W. Va. Feb. 2, 2017); *Pulse v. Layne*, No. 3:12-cv-00070, 2013 WL 142875, at *4 (N.D.W. Va. Jan. 11, 2013); *Ball v. Baker*, No. 5:10-cv-00955, 2012 WL 4119127, at *10 (S.D.W. Va. Sept. 18, 2012); *Kowalyk v. Hancock Cty.*, No. 5:08-cv-00181, 2009 WL 981848, at *2 (N.D.W. Va. Apr. 9, 2009).

However, the West Virginia Supreme Court of Appeals has imposed no such limitation on a plaintiff's ability to sue a county sheriff's office. *See* Fed. R. Civ. P. 17(b)(3) (providing that party's "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located"). In permitting a suit against the Tyler County Sheriff's Department in *Maston*, the Supreme Court of Appeals explained that the department was not immune from a state-law civil rights action because state law provides that political subdivisions are "statutorily liable for damages" caused by the negligence of their employees. 781 S.E.2d at 955 (quoting W. Va. Code § 29-12A-4(b)(1), (c)(2)). Further, the Supreme Court of Appeals treated a 42 U.S.C. § 1983 claim against a county sheriff in his official capacity as one "against the sheriff's department" in *Helms v. Carpenter*, No. 16-1070, 2017 WL 5513618, at *6 (W. Va. Nov. 17, 2017). Therefore, a county sheriff's office is a suable entity under West Virginia law, and Plaintiff's claims against RCSD will not be dismissed on that basis.

Turning to RCSD's principal argument, this Court agrees with RCSD that Plaintiff's complaint insufficiently pleads a §1983 claim against RCSD. "To hold . . . a local government entity[] liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom . . . caused the violation." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d

9

646, 653 (4th Cir. 2017) (quoting *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)). To withstand a motion to dismiss, the complaint must "identify" the county's policy or custom that resulted in the alleged violation of the plaintiff's rights. *Walker v. Prince George's Cty.*, 575 F.3d 426, 431 (4th Cir. 2009) (quoting *Bd. of Cty. Com'rs v. Brown*, 520 U.S. 397, 403 (1997)). "A policy or custom . . . can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Plaintiff relies on the third of these four theories. Specifically, the complaint alleges that RCSD utilized "an official policy" of failing to both train and supervise Hickman, which "result[ed] in Mr. Cottrell's death." (ECF No. 1 at 15.) With respect to the failure-to-train claim, a local government entity's "failure to train its officers can result in liability under [§] 1983 only when such failure reflects 'deliberate indifference' to the rights of its citizens." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In other words, to be liable under § 1983, the local government entity's failure to train must be the result of a "'deliberate' or 'conscious'" policy choice. *Id.* (citing *Harris*, 489 U.S. at 389). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a [local government] actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410). "[L]iability may attach if officers are not adequately trained 'in relation to the tasks the particular officers must perform,'

and this deficiency is 'closely related to the ultimate injury.'" *Lytle*, 326 F.3d at 473 (citing *Harris*, 489 U.S. at 390–91).

Plaintiff does not allege any facts to support his assertion that RCSD "had in effect policies, practices, or customs that condoned and fostered the unconstitutional conduct of [Hickman]." (ECF No. 1 at 15.) He alleges that "[c]ompleting a wellness check or a mental hygiene check for an individual who is emotionally disturbed or having a mental health crisis" and "[a]pprehending [such] individual[s]" are "usual and recurring situation[s] which [RCSD officers] encounter on a regular basis." (*Id.*) However, the complaint lacks factual allegations to suggest that those situations have resulted in the death of the individual who is the subject of the wellness check or mental hygiene check or that other RCSD officers "discharged their weapons prematurely, without warning, and without reasonable justification," (*id.* at 8), while conducting a wellness check or mental hygiene check. In other words, Plaintiff does not plead any facts to suggest that RCSD was on notice that its failure to train its officers with regard to wellness checks and mental hygiene checks would predictably result in excessive uses of force. *See Connick*, 563 U.S. at 71 ("To prove deliberate indifference, Thompson needed to show that Connick was on notice that, absent additional specified training, it was 'highly predictable' that the prosecutors in his office would . . . make incorrect *Brady* decisions as a result."); *Harris*, 489 U.S. at 390 (explaining that deliberate indifference occurs when "in light of the duties assigned to specific officers or employees the need for more or different training is . . . obvious, and the inadequacy [of training is] likely to result in the violation of constitutional rights" but no training is provided). Thus, Plaintiff's failure-to-train claim against RCSD is insufficiently pled and must be dismissed.

Like a claim for inadequate training, "a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse." *Wellington v.*

*Daniels*, 717 F.2d 932, 936 (4th Cir. 1983); *see Wilkins*, 751 F.3d at 214. Plaintiff pleads no facts to suggest that Hickman or any other RCSD officer engaged in conduct similar to that alleged here while "[c]ompleting a wellness check or a mental hygiene check for an individual who is emotionally disturbed or having a mental health crisis" or "[a]pprehending [such] an individual." (ECF No. 1 at 15.) Plaintiff alleges only that such wellness or mental hygiene checks are "a usual and recurring situation" that RCSD's officers "encounter on a regular basis." (*Id.*) Therefore, Plaintiff's failure-to-supervise claim against RCSD is also inadequately pled and must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, State Police Defendants' motion to dismiss, (ECF No. 10), is **GRANTED IN PART** and **DENIED IN PART**. RCSD's motion to dismiss, (ECF No. 13), is **GRANTED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 12, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE